UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NARRAGANSETT JEWELRY CO., INC.

    Plaintiff,

v.                          C.A. No. 05-225T

ST. PAUL FIRE AND MARINE INSURANCE CO.,

    Defendant.

## MEMORANDUM AND ORDER

ERNEST C. TORRES, Senior District Judge.

Narragansett Jewelry Co., Inc., d/b/a C&J Jewelry Co., Inc. ("Narragansett") seeks a declaratory judgment that St. Paul Fire and Marine Insurance Co. ("St. Paul") had a duty to defend and/or indemnify Narragansett in a suit brought by Slane & Slane against Narragansett in the United States District Court for the Southern District of New York (the "New York action").

St. Paul has moved for summary judgment on the ground that the claims in the New York action are not covered by the comprehensive general liability policy issued by St. Paul to Narragansett (the "Policy"). Because the complaint in the New York action does not set forth a claim that would be covered by the Policy, St. Paul's motion for summary judgment is granted.

### Background

The complaint in the New York action alleges that Slane & Slane is a jewelry design company and that, in 1996, it engaged

1

Narragansett to manufacture jewelry designed by Slane & Slane and molds for use by Slane & Slane. The complaint further alleges that Narragansett repeatedly failed to make timely delivery of the jewelry, and that both the jewelry and the molds manufactured by Narragansett were defective or of poor quality. The complaint seeks damages for breach of contract; breach of express warranty; breach of implied warranty; negligence; negligent misrepresentation; and breach of the covenant of good faith and fair dealing. The "Negligence" count alleges that Narragansett breached the duty of care owed by manufacturers of jewelry "[b]y consistently failing to deliver products in a timely manner, and by consistently delivering defective, broken, and unusable products". Complaint ¶ 42.

After St. Paul disclaimed coverage, Slane & Slane amended its complaint to add a claim for "Entrustment-Negligence" alleging that Slane & Slane provided certain models to Narragansett for its use in producing the jewelry and that "[Narragansett] caused physical damage to such models". Amended Complaint ¶43. St. Paul, once again, disclaimed coverage, which prompted Narragansett to bring this action for declaratory judgment.

While this action was pending, Narragansett settled the New York action. Accordingly, Narragansett seeks reimbursement for the cost of defending and settling the New York case; reimbursement for the attorney's fees incurred in bringing this case; and punitive

damages for what it contends was St. Paul's bad faith in refusing to defend Narragansett in the New York action.[1]

Narragansett argues that, at the very least, the claims of "Negligence" and "Entrustment-Negligence" required St. Paul to provide a defense in the New York action. In its motion for summary judgment, St. Paul argues that the policy does not afford coverage for these claims because the policy applies only to damage to property belonging to parties other than the insured and it excludes coverage for damage to the property of others while in the insured's "care, custody, or control".

### The Summary Judgment Standard

Summary Judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P 56(e). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004). In ruling on a summary judgment motion, a Court must view all facts and draw all inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). See Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995).

---

[1] This Court severed the bad faith claim pending resolution of the coverage issue.

("[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage.")

## Analysis

### I. The Policy

Narragansett's policy provides that St. Paul will "pay amounts [that Narragansett] is legally required to pay as damages for covered bodily injury or property damage that: happens while this agreement is in effect and is caused by an event." Policy 1-2. The policy defines "property damage" as "physical damage to tangible property of <u>others</u> . . . or loss of use of tangible property of <u>others</u> that isn't physically damaged," [emphases added] Policy at 2. An "event" is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Policy at 3. The Policy also excludes from coverage any damage to "personal property that is in the care, custody, or control of [Narragansett]." Policy at 17.

In construing an insurance policy, a court must examine the policy "'in its entirety and the words used must be given their plain everyday meaning.'" <u>St. Paul Fire and Marine Ins. Co. v. Warwick Dyeing Corp.</u>, 26 F.3d 1195, 1199 (1st Cir. 1994) (quoting <u>McGowan v. Connecticut Life Ins. Co.</u>, 289 A.2d 428, 429 (R. I. 1972)). <u>See also</u> <u>Malo v. Aetna Cas. and Sur. Co.</u>, 459 A.2d 954, 956 (R.I. 1983). If the terms of the policy are found to be "clear and

unambiguous," no further judicial construction is needed and the parties are bound by the terms as they are written. Warwick Dyeing Corp., 26 F.3d at 1199 (citing Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 551 (R.I. 1990)). On the other hand, if the policy, as written, is ambiguous or its terms can be reasonably interpreted in more than one way, the policy "will be construed liberally in favor of the insured and strictly against the insurer." Warwick Dyeing Corp., 26 F.3d at 1199. However, a "'policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context.'" Id. (quoting McGowan, 289 A.2d at 429.) Put another way, "a court should not, through an effort to seek out ambiguity when there is no ambiguity, make an insurer assume a liability not imposed by the policy." McGowan at 429.

## II. The New York Action

Insofar as the claims made in the New York action are concerned, it is clear that the policy would afford coverage only with respect to damage caused by Narragansett to property belonging to Slane & Slane and only if the damage did not occur while the property was in Narragansett's care, custody, or control.

It is equally clear that most of the claims contained in Slane & Slane's complaint and amended complaint are contractual[2] and that, except for the "Entrustment-Negligence" claim, all of them

---

[2] Narragansett does not argue that the contractual claims are covered under the Policy.

are based on allegations that Narragansett failed "to develop, produce and deliver models and products of a standard and usable quality," Complaint ¶ 3; that Narragansett's models were not of "usable quality" and "free from defects," Complaint ¶ 11; that Narragansett "repeatedly and consistently shipped defective, substandard and poor quality goods that were not in conformity with the designs submitted by Slane," Complaint ¶ 13; that Narragansett delivered "numerous broken items, in addition to those that were poorly made," id., and that Narragansett failed "to comply with the standard of care applicable to a manufacturer in the development and production of jewelry . . . [b]y consistently delivering defective, broken, and unusable products." Complaint ¶ 42.

Therefore, with the possible exception of the "Entrustment-Negligence" claim, none of those claims are covered by Narragansett's policy.

Narragansett argues that the "Entrustment-Negligence" claim added by the amended complaint is covered or, at least, that it triggered St. Paul's duty to defend because the claim alleges that Narragansett damaged some models belonging to Slane & Slane.

III. **The Duty to Defend**

"Under Rhode Island law,[3] an insurer's duty to defend its insured is broader than its duty to indemnify." Employers Mutual

---

[3]It is undisputed that Rhode Island law governs the construction of the Policy.

Casualty Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 215 (D.R.I. 1998). Rhode Island has adopted the "pleadings test" under which "an insurer's duty to defend hinges not on whether the insured may ultimately be liable, but on whether the complaint in the underlying tort action alleges facts and circumstances bringing the case within the coverage afforded by the policy." Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978). Deciding whether coverage is afforded, involves nothing more than "comparing the complaint in [the underlying] action with the policy issued by the insurer." Id.; see Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 402 (R.I. 1968)("[T]he insurer's duty to defend is ascertained by laying the tort complaint alongside the policy."); Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 541 (D.R.I. 1995).

Generally, "a duty to defend arises when the complaint in the underlying tort action contains facts sufficient to bring the case within or potentially within the coverage of the policy, regardless of whether the plaintiffs in the tort action will prevail on the merits." Hingham Mut. Fire Ins. Co. v. Heroux, 549 A.2d 265, 266 (R.I. 1988). See Flori, 388 A.2d at 26 ("[I]f the complaint discloses a statement of facts bringing the case potentially within the risk coverage of the policy the insurer will be duty-bound to defend irrespective of whether the plaintiffs in the tort action can or will ultimately prevail."); Beals, 240 A.2d at 402 ("[I]f the allegations in the complaint fall within the risk insured

against in the policy, the insurer is said to be duty-bound to provide a defense for the insured, regardless of the actual details of the injury or the ultimate grounds on which the insured's liability to the injured party may be predicated.") Any doubts as to whether the complaint alleges an event covered under the policy must be resolved in favor of the insured. Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1306 (R.I. 1994).

It is true, as noted in Emhart Industr., Inc. v. Homes Ins. Co., --- F. Supp.2d ---, 2007 WL 2782989 at *5 (D.R.I. Sept. 26, 2007), that the Rhode Island Supreme Court has never explicitly stated that the allegations in the underlying complaint must make it reasonable to conclude that a potential for coverage exists, but a reasonableness requirement is implicit in the pleadings test. The alternative would be to say that a duty to defend arises even where it is unreasonable to conclude that a potential for coverage exists and it seems unlikely that the Rhode Island Supreme Court intended the pleadings test to be applied in such a manner.

The significance of a reasonableness requirement becomes apparent in cases where an attempt is made to "plead to coverage" by characterizing a claim as something other than what is described in the complaint's factual allegations. The case of Peerless Ins. Co. v. Viegas, 667 A.2d 785 (R.I. 1995), provides an apt example. There, the insured, after pleading guilty to first and second degree child molestation, was sued by the victim and her parents

for what the complaint characterized as "negligent" infliction of emotional distress. The insurer sought a declaratory judgment that the homeowner's policy issued to the defendant afforded no coverage because it contained an exclusion for "bodily injury . . . expected or intended by the insured." Id. at 787. The trial justice, while acknowledging that there probably was no coverage, nevertheless, denied the insurer's motion for summary judgment and found that insurer had a duty to defend because the underlying complaint alleged "negligence," the kind of conduct that would be covered by the policy. The Rhode Island Supreme Court reversed and held that

> "[t]he fact that the allegations in that complaint are described in terms of 'negligence' is of no consequence. A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark. [The insured's] acts of sexual molestation that form the basis of plaintiff's complaint in P.C. 90-4313 were clearly intentional." Id. at 789.

The principle underlying the holding in Peerless is equally applicable to this case. All of the claims in Slane & Slane's initial complaint are for breach of contract and negligent manufacture. These claims make no mention of any damage to property belonging to Slane & Slane. Allegations of damage to Slane & Slane's property first appeared in the "Entrustment-Negligence" count that was added after St. Paul first denied coverage.

More importantly, the factual allegations in the "Entrustment-

Negligence" claim cannot reasonably be construed as establishing any potential for coverage because they describe a loss to which the exclusion for damage to property "in the care, custody or control of [Narragansett] would apply. Narragansett argues that the claim could be interpreted to mean that Slane & Slane's models were damaged in transit or while otherwise in the possession of some third party and that, therefore, the exclusion would not apply. However, such an interpretation would be unreasonable because it is at odds with the factual allegations in the complaint.

The "Entrustment-Negligence" count alleges that Narragansett "caused physical damage" to the models while they were "entrusted" to Narragansett. Amended Complaint ¶ 43. It is difficult to see how the models could have been damaged while "entrusted" to Narragansett but not while in the "care, custody or control [of Narragansett]" or how Narragansett could have "caused" damage to models entrusted to it if the models were not in its "care, custody or control." Speculation that the models might have been damaged by some third party while not in Narragansett's "care, custody or control" and that Narragansett, somehow, still "caused" the damage would be inconsistent with both logic and the plain meaning of the factual allegations contained in the underlying complaint. Put another way, it would be tantamount to describing a "cat to be a dog."

In short, the "pleadings test" does not require that, in order to give rise to a duty to defend, the underlying complaint must establish that there is coverage; or, even, that coverage is more likely than not. All that the test requires is that the complaint establishes a potential for coverage. However, it must be reasonable to conclude that a potential for coverage exists. Thus, where the complaint's factual allegations are such that it would be unreasonable to conclude that a potential for or possibility of coverage exists, no duty to defend arises. Here, based on the factual allegations in Slane & Slane's complaint, it would be unreasonable to conclude that the "Entrustment-Negligence" claim, or any other claim asserted in the New York action, is "potentially within the risk of coverage" of Narragansett's policy.

## Conclusion

For the all the foregoing reasons, St. Paul's motion for summary judgment is granted.


IT IS SO ORDERED,

*Ernest C Torres*
Ernest C. Torres
Sr. U.S. District Judge
Date: November 26, 2007